Alexandre **STOYANOV**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 01–2942.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 2002.

Decided July 18, 2002.

Before BAUER, POSNER, KANNE, Circuit Judges.

## ORDER

Alexandre Stoyanov arrived in the United States from Bulgaria as a non-immigrant visitor in 1991 and later that year filed a request for asylum, which was denied. After the INS initiated deportation procedures, the underlying facts of which Stoyanov conceded, he filed for asylum in 1996. An immigration judge denied Stoyanov's request and the Board of Immigration Appeals affirmed. Stoyanov's petition seeks a review of that decision.[1]

In 1991, Stoyanov filed his first asylum application and stated that because he did not join the Bulgarian Communist Party, he was restricted from advancing in his profession and from traveling. His attached declaration claimed that he was active in an anti-government movement in Bulgaria and participated in seven demonstrations between late–1990 and early–1991. Stoyanov's declaration further stated that he was fired from his job as a waiter because he expressed his democratic opinions to his supervisor and that he was subsequently unable to obtain another job.

In 1996, Stoyanov filed his second asylum application and averred that he had suffered mistreatment on account of his membership in a particular social group and on account of his political opinion. His declaration alleged that he was persecuted because of a property dispute between him and members of the Bulgarian Communist Party. A hearing was held

---

1. Because Stoyanov entered deportation proceedings prior to April 1, 1997, we apply statutory immigration law as is it stood prior to passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See Pop v. INS,* 270 F.3d 527, 529 n. 1 (7th Cir.2001).

before an immigration judge at which Stoyanov elaborated upon his alleged persecution. Stoyanov claimed that on May 25, 1990, he was summoned to the local police station and interrogated. According to Stoyanov, one police officer told him to forget about the dispute, before two other officers beat him with small sacks filled with sand. Stoyanov also alleged that police officers had beaten and threatened him on several other occasions, but did not provide any details of these alleged occurrences. Stoyanov also stated that he was pushed in front of a car in June 1990 but did not see who pushed him. Stoyanov further testified that he was subsequently charged with tax evasion which, according to Stoyanov, was a charge fabricated by the government. Stoyanov stated that although he hired an attorney to defend himself, he fled Bulgaria instead of disputing the charge. Finally, when asked whether Bulgarian officials would persecute him if he returned, Stoyanov replied, "this is a personal problem ... maybe the authorities would not be interested in me if I am returned to Bulgaria because this all happened quite awhile ago."

Subsequently, the immigration judge found Stoyanov deportable as charged and ineligible for asylum and withholding of deportation. The immigration judge questioned Stoyanov's credibility, noting the "many gaping holes" in his claim and that he had failed to reveal any of the events he relied on in support of his second asylum application in his first asylum application and declaration. Further, the immigration judge stated that Stoyanov failed to demonstrate a continuing risk of harm by the local Bulgarian police and that Stoyanov had "presented no persuasive evidence that criminal prosecution was ongoing or that the authorities in Bulgaria were seeking his whereabouts." The immigration judge also noted that Stoyanov had not presented any credible documents con-

cerning the alleged prosecution itself or indeed "any independent corroborative evidence from reliable sources" substantiating his claim. For example, Stoyanov did not produce a copy of the criminal complaint allegedly filed against him. Finally, the immigration judge found that the administrative record was insufficient to conclude that Stoyanov faced a reasonable possibility of persecution if he returned to Bulgaria. Thus, the immigration judge found that Stoyanov had failed to establish past persecution or a well-founded fear of future persecution based on an enumerated ground.

Stoyanov appealed to the Board of Immigration Appeals (the "Board"), contending that the immigration judge erred and that Stoyanov had demonstrated past persecution by the Bulgarian police and government as well as a well-founded fear of future persecution if he were to return to Bulgaria. The Board affirmed the immigration judge's decision, agreeing with the immigration judge that there were significant evidentiary gaps in Stoyanov's claim and noting that Stoyanov had failed to set forth with detailed, plausible, and consistent facts a viable claim to asylum. Thus, the Board affirmed the immigration judge's determination that Stoyanov had not shown that he had suffered past persecution or maintained a well-founded fear of future persecution on account of an enumerated ground

In order to obtain asylum, Stoyanov must establish that he is a "refugee." *See* 8 U.S.C. § 1158(b)(1). A "refugee" is defined as one who is unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* at § 1101(a)(42). If the alien demonstrates past persecution, a presumption arises that

the alien has a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1). This presumption is rebuttable and if conditions in the alien's homeland have improved sufficiently, the Board may deny the request for asylum notwithstanding the past persecution. *See id.* at § 208.13(b)(1)(i)(A); *Toptchev v. INS,* 295 F.3d 714, ——, 2002 WL 1433405, at *4 (7th Cir.2002). The Board's determination that Stoyanov was not eligible for asylum must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). We will reverse only if the evidence is such that a reasonable fact finder would be compelled to reach an opposite conclusion. *See id.*

We begin by noting that substantial evidence in the record supports the Board's decision that Stoyanov's evidence of past persecution lacks corroboration and credibility. Stoyanov's claim of past persecution is undermined by his failure to mention the property dispute as a reason for seeking asylum in his initial applications. Stoyanov's first asylum application omitted any account of the alleged harassment and beatings that he now claims that he suffered at the hands of police authorities. In his initial application, Stoyanov had several opportunities to set forth his past persecution or the basis for future persecution, often by simply answering a yes or no question, but he did not do so. The Board, as did the immigration judge, reasonably could believe that these omissions and discrepancies undermined the credibility of his allegation of persecution, and we are "simply not in a position to second-guess those kinds of factual findings and

credibility determinations." *Mansour v. INS,* 230 F.3d 902, 906 (7th Cir.2000).

Moreover, even if we were to assume that Stoyanov has established past persecution, we would still affirm the Board because Stoyanov acknowledged that Bulgarian authorities "would not bother him" because "this all happened quite a while ago." Such a concession supports the Board's conclusion that Stoyanov lacks a well-founded fear of future persecution. *See Bereza v. INS,* 115 F.3d 468, 473 (7th Cir.1997). Moreover, the Board's conclusion is also supported by the fact that Stoyanov's family has lived in Bulgaria unmolested for several years.[2] *See Toptchev,* 295 F.3d 714, ——, 2002 WL 1433405, at *7. Finally, Stoyanov was able to obtain a passport and leave Bulgaria. That the government did not interfere with his efforts to leave the country tends to undermine the notion that he will be persecuted if he returns to Bulgaria. *See id.* While none of the above forecloses the possibility of future persecution, it does amount to "reasonable, substantial, and probative evidence" supporting the Board's determination, and therefore, even if we assumed that Stoyanov had established past persecution, we would still affirm the Board's decision.

Because Stoyanov fails to demonstrate that he should have been granted asylum, he necessarily fails to satisfy the more stringent requirements for withholding of deportation. *See Boykov v. INS,* 109 F.3d 413, 418 (7th Cir.1997).

For the foregoing reasons, we AFFIRM the decision of the Board.

---

**2.** Although Stoyanov claimed that the government harassed his family before 1993, he did not claim that they were harassed after that time.